**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In the Matter of a Subpoena to Testify At a Deposition in a Civil Action for Jefferson B. Sessions | ) ) ) ) | CASE NUMBER: 23-mc-00016 |
| Wilbur P.G. et al., | ) ) | |
| Plaintiffs, | ) ) ) | In the United States District Court for the Northern District of California |
| v. The United States of America, | ) ) ) | **(Related Case)** Magistrate Judge Kandis A. Westmore |
| Defendant. | ) ) ) ) | Case No. 4:21-cv-04457-KAW |

**MOTION TO QUASH RULE 45 DEPOSITION SUBPOENA**
**AND INCORPORATED MEMORANDUM OF LAW**

Charles J. Cooper (Bar No. 2244)
Harold S. Reeves*
Nicole J. Moss*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com

*Applications for admission pro hac vice
forthcoming

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...........................................................................................................ii

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................4

I.     LONGSTANDING PRECEDENT PROHIBITS COMPELLING THE
TESTIMONY OF MEMBERS OF THE PRESIDENT'S CABINET. ...............................5

II.    PLAINTIFFS HAVE FAILED TO ESTABLISH THE EXTRAORDINARY
CIRCUMSTANCES THAT WOULD WARRANT COMPELLING
A HIGH-LEVEL GOVERNMENT OFFICIAL TO TESTIFY...........................................7

     A.    Plaintiffs Have Not Made a "Strong Showing of Bad Faith or
Improper Behavior." ............................................................................................10

     B.    The Evidence Sought from The Attorney General Is Obtainable
from Other Sources. ..............................................................................................13

III.   *MORGAN* AND THE APEX DOCTRINE PROTECT FORMER OFFICIALS...............17

CONCLUSION..............................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Am. Can Co. v. Citrus Feed Co.*,
    436 F.2d 1125 (5th Cir. 1971) ...................................................................................18

*Apple, Inc. v. Samsung Elecs. Co.*,
    282 F.R.D. 259 (N.D. Cal. 2012) .........................................................................18, 19

*Bogan v. City of Boston*,
    489 F.3d 417 (1st Cir. 2007) .................................................................................8, 9

*Buckler v. Israel*,
    No. 13-62074, 2014 WL 7777678 (S.D. Fla. Nov. 13, 2014)...........................................19

*California v. United States*,
    No. 05-0328, 2006 WL 2621647 (N.D. Cal. Sept. 12, 2006) ..........................................15

*Cheney v. United States Dist. Ct. of D.C.*,
    542 U.S. 367 (2004).............................................................................................11

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)......................................................................................10, 11

*City of Fort Lauderdale v. Scott*,
    No.10-61122-CIV, 2012 WL 760743 (S.D. Fla. Mar. 7, 2012) ......................................19

*Coleman v. Schwarzenegger*,
    No. CIV S-90-0520, 2008 WL 4300437 (E.D. Cal. Sept. 15, 2008)..........................16, 17

*Cruz v. Green*,
    No. 18-60995, 2019 WL 5208913 (S.D. Fla. Feb. 7, 2019) ............................................19

*De Cambra v. Rogers*,
    189 U.S. 119 (1903)............................................................................................6

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001)...............................................................................................18

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019)............................................................................6, 7, 10, 12

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
    No. 15-00752, 2015 WL 5602342 (D.D.C. Sept. 24, 2015) ............................................19

*Franklin Sav. Ass'n v. Ryan*,
    922 F.2d 209 (4th Cir. 1991) ...................................................................................8

*Gray v. Kohl*,
    No. 07-10024, 2008 WL 1803643 (S.D. Fla. Apr. 21, 2008) ..........................................19

*Hammer v. Ashcroft*,
    570 F.3d 798 (7th Cir. 2009) ...................................................................................8

*Harmston v. City & Cnty. of San Francisco*,
    No. 07-01186, 2007 WL 3306526 (N.D. Cal. Nov. 6, 2007)...........................................15

*In re Clinton*,
   973 F.3d 106 (D.C. Cir. 2020) .........................................................................7

*In re Dep't of Com.*,
   139 S. Ct. 16 (2018) ....................................................................................6, 10

*In re FDIC*,
   58 F.3d 1055 (5th Cir. 1995) ..............................................................8, 9, 12, 15

*In re McCarthy*,
   636 F. App'x 142 (4th Cir. 2015) ...................................................................7

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) .........................3, 7, 9, 10, 12, 13, 18, 19

*In re United States (Holder)*,
   197 F.3d 310 (8th Cir. 1999) ..............................................................8, 9, 11, 15

*In re United States*,
   542 F. App'x 944 (Fed. Cir. 2013) ..............................................................8, 18

*In re United States*,
   985 F.2d 510 (11th Cir. 1993) ..............................................................8, 14, 15

*In re USA*,
   624 F.3d 1368 (11th Cir. 2010) ..........................................7, 8, 13, 14, 17

*Jagers v. Federal Crop Ins. Corp.*,
   758 F.3d 1179, 1185 (10th Cir. 2014) .........................................................12

*K.C.R. v. Cnty. of Los Angeles*,
   No. 13-3806, 2014 WL 3434257 (C.D. Cal. July 11, 2014) ....................17, 19

*Kyle Eng'g Co. v. Kleppe*,
   600 F.2d 226 (9th Cir. 1979) .........................................................................8

*Lederman v. N.Y. City Dep't of Parks and Recreation*,
   731 F.3d 199 (2d Cir. 2013) ....................................................................8, 19

*Marllantas, Inc. v. Rodriguez*,
   806 F. Appx. 864 (11th Cir. 2020) .............................................................10

*Mejia-Mejia v. ICE*,
   No. 18-1445, 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ...............................4

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) .......................................................................18

*Olivieri v. Rodriguez*,
   122 F.3d 406 (7th Cir. 1997) .........................................................................8

*Peña Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) .........................................................4

*Raymond v. City of New York*,
   No. 15-6885, 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020) ..............................19

*Sargent v. City of Seattle*,
    No. C12-1232, 2013 WL 1898213 (W.D. Wash. May 7, 2013) ........................17

*Simplex Time Recorder Co. v. Sec'y of Labor*,
    766 F.2d 575 (D.C. Cir. 1985) ...................................................................7

*Sweeney v. Bond*,
    669 F.2d 542 (8th Cir. 1982) ...................................................................16

*Sykes v. Brown*,
    90 F.R.D. 77 (E.D. Pa. 1981) ...................................................................18

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
    No. 09-01201, 2011 WL 811731 (N.D. Cal. Mar. 2, 2011) .........................15

*Thomas v. Cate*,
    715 F. Supp. 2d 1012 (E.D. Cal. 2010) ....................................................17

*United States v. Armstrong*,
    517 U.S. 456 (1996) ................................................................................11

*United States v. Morgan*,
    313 U.S. 409 (1941) ........................................................................1, 4, 17

*United States v. Sensient Colors, Inc.*,
    649 F.Supp.2d 309 (D.N.J. 2009) .............................................................17

*United States v. Wal-Mart Stores, Inc.*,
    No. CIV 01-152, 2002 WL 562301 (D. Md. Mar. 29, 2002) ....................19, 20

*Vill. of Arlington Heights v. Metro. Hous. Dev.*,
    429 U.S. 252 (1977) ...........................................................................10, 17

*Walker v. NCNB Nat'l Bank of Fla.*,
    810 F. Supp. 11 (D.D.C. 1993) ................................................................18

*Warren Bank v. Camp*,
    396 F.2d 52 (6th Cir. 1968) ......................................................................8

## Constitutions and Codes

U.S. Const.
    art. II, § 2, cl. 1 ....................................................................................17
    art. II, § 2, cl. 2 ....................................................................................17

20 U.S.C. § 3411 .........................................................................................17

28 U.S.C. 636(c) ...........................................................................................3

**<u>Other Authorities</u>**

*Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services*, No. 21-028, DEP'T OF JUST., OFFICE OF THE INSPECTOR GEN. (Jan. 2021) (Revised Apr. 13, 2022), *available at* https://bit.ly/3M038JZ ..........................................16

Attorney General, *Memorandum for Federal Prosecutors Along the Southwest Border: Zero-Tolerance for Offenses under 8 U.S.C. § 1325(a)*, DEP'T OF JUST. (Apr. 6, 2018), *available at* https://perma.cc/L845-BF3X .........................................................................1

Former United States Attorney General Jefferson B. Sessions, a non-party to the above-captioned matter respectfully moves this Court pursuant to Federal Rule of Civil Procedure 45(d)(3) to quash the non-party subpoena served upon the former Attorney General on October 7, 2023, seeking to depose him in this case on October 26, 2023. Absent intervention by this Court to quash the subpoena, former Attorney General Sessions will be the first Cabinet officer compelled to provide deposition testimony since the Supreme Court effectively prohibited such "apex" depositions over 80 years ago in *United States v. Morgan*, 313 U.S. 409 (1941).

## BACKGROUND

The case in which this subpoena has been issued is one of over 40 cases pending throughout the country arising out of the United States Department of Justice's 2018 "zero tolerance policy" ("ZTP"), which directed "each United States Attorney's Office along the Southwest Border—to the extent practicable and in consultation with [the Department of Homeland Security] ("DHS")—to adopt immediately a zero tolerance policy for all offenses referred for prosecution" by DHS under federal law prohibiting unlawful entry into the United States. Attorney General, *Memorandum for Federal Prosecutors Along the Southwest Border: Zero-Tolerance for Offenses under 8 U.S.C. § 1325(a)*, at 1, DEP'T OF JUST. (Apr. 6, 2018), *available at* https://perma.cc/L845-BF3X. Plaintiffs in this case sued the United States in the Northern District of California, asserting claims under the Federal Tort Claims Act ("FTCA") for intentional infliction of emotional distress, negligence, negligent supervision/breach of fiduciary duty, abuse of process, and loss of consortium, all allegedly arising from the ZTP. *See* Compl., Doc. 1 (June 10, 2021).[1] Plaintiffs "allege that the entire prosecution scheme [under ZTP] was a mere pretext for the Government to

---

[1] The docket citations ("Doc.") throughout this brief refer to the docket in the underlying case from which the subpoena issued—*Wilber et. al. v. United States of America*, No. 4:21-cv-04457-KAW.

implement its true policy aim -- to separate immigrant families." Discovery Ltr. Br. re: Mot. to Compel, Doc. 98 at 2 (Sept. 15, 2023), attached hereto as Exhibit A.

In November 2022 Plaintiffs served an interrogatory asking the Government (1) to describe "any policy goals" the Government sought to achieve under the ZTP and (2) to identify "all individuals with knowledge of the policy goals." Defs.' Third Am. and Suppl. Resps. and Objs. to Pls.' First Set of Interrogs., at 6, Doc. 98-2, (Sept. 8, 2023), attached hereto as Exhibit B. The United States initially identified two former Cabinet officers—former Attorney General Sessions and former DHS Secretary Kirstjen Nielsen—and three former sub-Cabinet officials, including Thomas Homan, the Acting Director of Immigration and Customs Enforcement ("ICE"), and Kevin McAleenan, the Commissioner of Customs and Border Protection ("CBP"). *Id.* at 8. The depositions of Messrs. Holman and McAleenan were taken in a parallel FTCA case pending in Arizona federal district court, and Plaintiffs obtained those transcripts for use in this case. Ex. A, at 3. The United States described the Government's policy goal: "The policy goal that Defendant sought to achieve by the 2018 Zero-Tolerance Policy and . . . Department of Homeland Security Referral Policy Memorandum, was to reduce illegal immigration into the United States." Ex. B, at 7.

On September 27, 2023, the last day of fact discovery, the United States amended its interrogatory response to add, among other things, the following sentences:

> The 2018 Zero-Tolerance Policy was issued by Attorney General Sessions and the April 23, 2018 Department of Homeland Security Referral Policy Memorandum was signed by Secretary Nielsen on May 4, 2018. Accordingly, the goals that Defendant sought to achieve in adopting those policies are solely the goals for which Attorney General Sessions and Secretary Nielsen, respectively, adopted those policies.

Ex. B, at 7. The United States then identified the same five former officials having knowledge of the Government's policy goals, and added a sixth, Gene Hamilton, former Counselor to Attorney General Sessions.

Although the United States nowhere suggested that General Sessions and Secretary Nielson alone currently possess knowledge of their policy goals in adopting the ZTP, Plaintiffs nevertheless sought leave from the presiding Magistrate Judge[2] to depose both former Cabinet officers. Plaintiffs argued that taking these apex depositions satisfied the Ninth Circuit's three-prong test requiring "(1) a showing of agency bad faith; (2) the information . . . is essential to the case; and (3) the information . . . cannot be obtained in any other way." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 702 (9th Cir. 2022). The bad faith prong was met, according to Plaintiffs, because their complaint "alleg[es] that Defendant engaged in unconstitutional behavior, an allegation the Court accepted at the motion to dismiss stage." Ex. A, at 4. The second and third prongs were satisfied simply because "Mr. Sessions and Ms. Nielson have unique personal knowledge of their own intent." *Id*. at 3. Plaintiffs, however, offered no evidence tending to establish, and provided no reason why they believed, that General Sessions had never communicated his policy goals for the ZTP to sub-Cabinet officials at the Department of Justice or to any other officials of the United States Government, or, for that matter, had never reduced those goals to writing.

The Magistrate Judge, while acknowledging that "apex depositions are highly disfavored," agreed that Plaintiffs had established the "extraordinary circumstances" necessary to depose a cabinet secretary under Ninth Circuit's three-pronged test. Order, Doc. 103 at 2 (Sept. 25, 2023). In a perfunctory two-sentence echo of Plaintiffs' arguments, the Magistrate Judge held:

---

[2] By the consent of the parties, the litigation in the Northern District of California is being conducted before Magistrate Judge Kandis Westmore. *See* 28 U.S.C. 636(c).

> Here, Plaintiffs satisfy the first prong, because they allege that the agency acted in bad faith by implementing the Zero Tolerance Policy as pretext to separate undocumented immigrants from their minor children. The second and third prongs are also satisfied, because Sessions and Nielson have unique personal knowledge of their own intent, and Defendant contends in its amended response that only their intent matters, rendering the information not otherwise attainable and essential to the prosecution of the case.

*Id.* The Court added that it was "disappointed that the Government amended its responses at the close of fact discovery to suddenly claim that only the intent of two former cabinet secretaries matters, and that it is now attempting to hide behind the apex doctrine to prevent their depositions from going forward." *Id.* "Such an injustice," the Court concluded, "cannot stand." *Id.*

General Sessions, who is not a party to the action and did not participate in the litigation of Plaintiffs' motion for leave to seek his deposition, became aware of this ruling shortly thereafter. Plaintiffs served former Attorney General Sessions with a subpoena on October 9, 2023. General Sessions now moves to quash that subpoena.

## ARGUMENT

The Court should issue a protective order quashing the deposition subpoena served on former Attorney General Sessions, and refuse Plaintiffs' call to enlist the judiciary in their extraordinary and unprecedented effort to depose a former Attorney General on his subjective intentions and mental processes in exercising his prosecutorial discretion.[3] To permit this deposition to proceed would ignore Supreme Court precedent that has categorically prohibited, as a matter of the constitutional separation of powers, the federal courts from compelling the testimony of a member of the President's Cabinet in order to probe his or her subjective intentions and mental processes in official decision-making. *United States v. Morgan*, 313 U.S. 409 (1941).

---

[3] Courts have recognized that the prosecution policy set forth in the ZTP "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see Peña Arita v. United States*, 470 F. Supp. 3d 663, 691–692 (S.D. Tex. 2020).

Indeed, no court of appeals *has ever* compelled, or permitted, the deposition of a Cabinet officer for *any reason* following the Supreme Court's admonition in *Morgan*. Even if General Sessions had been merely a high-ranking official in the Executive Branch, and not the head of a Cabinet department, Plaintiffs have not demonstrated the existence of the extraordinary circumstances that, under the "apex doctrine," are prerequisites to compelling the deposition of any high-ranking official. They have not made the threshold "strong showing of bad faith or improper behavior," nor have they shown that the information they seek from General Sessions is not obtainable from other sources. To the contrary, Plaintiffs have admitted in their briefing in the underlying case that they have obtained through discovery what they contend is such evidence and point to that very evidence as justification for this deposition. The Court should, accordingly, grant General Sessions' motion to quash.

## I.   LONGSTANDING PRECEDENT PROHIBITS COMPELLING THE TESTIMONY OF MEMBERS OF THE PRESIDENT'S CABINET.

The deposition is being sought because, according to the Plaintiffs, former Attorney General Sessions has "unique personal knowledge of [his] own intent, and Defendant contends in its amended response that only [his] intent matters, rendering the information not otherwise attainable and essential to the … case." Doc. 103 at 2. Plaintiffs thus seek to depose General Sessions regarding his subjective intentions and mental processes in developing the Department of Justice's prosecutorial policies regarding the nation's criminal laws prohibiting illegal immigration.

Longstanding and settled precedent, however, categorically prohibits the deposing of Cabinet officers regarding their subjective motivations and mental processes in taking official action. In *Morgan*, the Supreme Court addressed the propriety of a deposition in which the Secretary of Agriculture was "questioned at length regarding the process by which he reached the

conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." 313 U.S. at 421–22. The Court held that "the Secretary should *never* have been subjected to this examination" because "the appropriate independence of each [branch] should be respected" and it is "not the function of the court to probe the mental processes of the Secretary." *Id.* at 422 (emphasis added). The Court explained:

> Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected…. [A]lthough the administrative process … pursues somewhat different ways from those of courts, they are …collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Id*. (citations omitted). The Supreme Court has thus settled the question: it is "not the function of the court to probe the mental processes of the" Attorney General. *Id.* This is, as the Court explained, something a court should "never" do. *Id. See also De Cambra v. Rogers*, 189 U.S. 119, 122 (1903) ("It is hardly necessary to say that when a decision has been made by the Secretary of the Interior, courts will not entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination."). Never means never.

The Supreme Court implicitly reaffirmed this principle when it granted the Solicitor General's request to stay an order that would have permitted plaintiffs "to probe Secretary [of Commerce Wilbur] Ross's mental processes—his subjective motivations—when he decided to reinstate the citizenship question" on the decennial census. Application for a Stay at 3, *In re Dep't of Com.*, No. 18A375 (Oct. 9, 2018). While the Court declined to stay all discovery outside of the administrative record of Secretary Ross's decision-making process in connection with these changes to the census, it tacitly acknowledged that the deposition of a Cabinet secretary was a bridge too far. *See In re Dep't of Com.*, 139 S. Ct. 16 (2018); *id.* at 18 ("[T]he Court apparently thinks the deposition of a cabinet secretary especially burdensome.") (Gorsuch, J., joined by Thomas, J. concurring in part and dissenting in part); *Dep't of Com. v. New York*, 139 S. Ct. 2551,

2574 (2019) (noting that even though extra-record discovery was justified in the case, it "did not include the deposition of the Secretary").

Movant is unaware of even a single appellate court decision that has approved compelling the testimony of a Cabinet secretary for any purpose, much less for the purpose of probing into the subjective intentions and mental processes behind the discretionary prosecutorial decisions of the Nation's chief law enforcement officer. To the contrary, every time an appellate court—including the Courts of Appeals for both the Eleventh Circuit and the Ninth Circuit—has been confronted with an order compelling the testimony of a Cabinet secretary, it has barred the deposition. *In re USA*, 624 F.3d 1368 (11th Cir. 2010); *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022); *In re Clinton*, 973 F.3d 106 (D.C. Cir. 2020); *In re McCarthy*, 636 F. App'x 142 (4th Cir. 2015); *In re United States*, 197 F.3d 310 (8th Cir. 1999).

As these more recent decisions make clear, *Morgan* remains the law of the land and, out of respect for a coordinate branch, the courts should *never* compel a Cabinet officer to testify concerning his or her mental processes and intentions underlying official action. *See In re USA*, 624 F.3d at 1376. The subpoena should therefore be quashed.

## II.    PLAINTIFFS HAVE FAILED TO ESTABLISH THE EXTRAORDINARY CIRCUMSTANCES THAT WOULD WARRANT COMPELLING A HIGH-LEVEL GOVERNMENT OFFICIAL TO TESTIFY.

While constitutional separation of powers concerns are at their zenith when the judicial branch seeks to probe the mental processes of the Chief Executive or, as here, one of his Cabinet secretaries, these same concerns weigh heavily against compelling the testimony of *any* high-level Executive Branch official. It is thus unsurprising that, in the 80 years since the Court decided *Morgan*, the courts of appeals have uniformly held that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985).

*See also In re United States*, 985 F.2d 510, 512 (11th Cir. 1991); *In re USA*, 624 F.3d 1368, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Lederman v. N.Y. City Dep't of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *Warren Bank v. Camp*, 396 F.2d 52, 56–57 (6th Cir. 1968); *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009); *Olivieri v. Rodriguez*, 122 F.3d 406, 409, 410 (7th Cir. 1997); *In re United States*, 197 F.3d at 313–14; *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979); *In re United States*, 542 F. App'x 944, 947 (Fed. Cir. 2013).

The gravity of the issue was captured by the Eleventh Circuit in a case in which a district court had ordered the Administrator of the Environmental Protection Agency, a sub-Cabinet officer, to appear at a hearing concerning the agency's alleged noncompliance with the court's prior orders: "[T]he compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers, and we have allowed an executive official to challenge an order compelling his appearance by filing a petition for a writ of mandamus without having to incur a contempt sanction." *In re USA*, 624 F.3d at 1372. Noting that nothing in the Supreme Court's decision in *Morgan* "even hint[s] that a federal district court should *ever* compel a member of the President's cabinet or another high-ranking official to appear in a judicial proceeding to testify about the official's duties or decisions," the Court issued a writ of mandamus barring the District Court from compelling the Administrator's testimony. *Id*. at 1376. *See also In re United States*, 985 F.2d at 512–513 (relying on *Morgan*, Court granted writ of mandamus ordering the district court to quash a subpoena requiring the Commissioner of the Food and Drug Administration to testify (by telephone, for 30 minutes) in a criminal proceeding).

The courts protect these high-ranking officials under the "apex doctrine," which requires that "extraordinary circumstances" exist before a deposition of a high-ranking official may be taken—*i.e.*, a clear showing that the agency has engaged in bad faith or improper conduct and that the official has essential information that is unique and cannot be obtained from any other source or in a less intrusive manner. *See, e.g., Bogan*, 489 F.3d at 423; *In re United States*, 197 F.3d at 313–14; *In re FDIC*, 58 F.3d at 1060.

While several lower courts have concluded "that *Morgan* is not an absolute bar against the taking of such depositions, and that cabinet secretaries may be deposed under extraordinary circumstances," *In re U.S. Dep't of Educ.*, 25 F.4th at 701, the Supreme Court has itself never held that the apex doctrine's extraordinary circumstances test, and not the blanket prohibition that it announced in *Morgan*, applies to judicial efforts to probe the subjective intentions and mental processes of Cabinet officials. But even if the apex doctrine were to apply here, the circumstances of this case fall far short of what would be required to make this the first case in American history in which a deposition subpoena directed against a former Cabinet officer is justified and enforceable.

The "extraordinary circumstances" test is a demanding one. As the Magistrate Judge correctly noted, three showings must be made in order to satisfy it:

> [E]xtraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist when the party seeking the deposition can demonstrate: (1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way. All three factors must be satisfied in order to take a secretary's deposition.

*In re U.S. Dep't of Educ.*, 25 F.4th at 707. Plaintiffs have not come close to making the requisite showing.

**A.      Plaintiffs Have Not Made a "Strong Showing of Bad Faith or Improper Behavior."**

To inquire into the mental processes of any high-ranking administrative decisionmaker, a party must as a threshold matter make a "strong showing of bad faith or improper behavior." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). *See also In re U.S. Dep't of Educ.*, 25 F.4th at 702 ("A showing of bad faith is a threshold issue to justifying taking a cabinet secretary's deposition."). "Bad faith is a requirement because when the agency has been dishonest, further judicial scrutiny is justified and, in fact, necessary to effectuate judicial review." *Id*. at 703. This is a high bar to clear, as "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 268, n.18 (1977) (*citing Fletcher v. Peck*, 6 Cranch 87, 130–31 (1810)). *See also In re Dep't of Com.*, 139 S. Ct. at 17 ("Leveling an extraordinary claim of bad faith against a coordinate branch of government requires an extraordinary justification.") (Gorsuch, J., joined by Thomas, J., concurring in part and dissenting in part); *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 867 (11th Cir. 2020).

Plaintiffs in this case did not attempt to make *any* showing of DOJ bad faith, let alone a "strong showing." Instead, in support of their request to depose General Sessions, Plaintiffs argued to the Magistrate Judge that they satisfy this "prong because they make an allegation of agency bad faith by alleging that Defendant engaged in unconstitutional behavior, an allegation the Court accepted at the motion to dismiss stage." Ex. A at 4.[4] The Magistrate Judge agreed, concluding that plaintiffs had satisfied this requirement "because they allege that the agency acted in bad faith

---

[4] We submit that unconstitutional action alone is not tantamount to agency bad faith. As Justice Thomas recently observed: "We have never before found *Overton Park's* [bad faith] exception satisfied." *Dep't of Com.*, 139 S. Ct. at 2579 (Thomas, J., concurring in part and dissenting in part).

by implementing the [z]ero [t]olerance [p]olicy as pretext to separate undocumented immigrants from their minor children." Doc. 103 at 2. A naked allegation of bad faith is not, obviously, a strong showing of bad faith.

Plaintiffs' contention, and the Magistrate Judge's ruling, is thus patently inconsistent with the requirement that plaintiffs make a "strong showing" of agency bad faith—not just an "allegation" that passes the minimum threshold of plausibility required to survive a motion to dismiss—before taking the extraordinary step of requiring a former Cabinet officer to sit for an intrusive deposition to examine that decisionmaker's mental processes. *See Overton Park*, 401 U.S. at 420. Indeed, accepting the notion that a naked *allegation* that the Government has engaged in bad faith or improper behavior is sufficient *ipso facto* to warrant the compelled testimony of a Cabinet officer would mean that such an apex deposition may be ordered in any case that adequately alleges such agency misconduct, thus swallowing *Overton Park* and its progeny whole. Plaintiffs' contention is also inconsistent with the presumption of regularity, which requires courts to presume that executive officers act in good faith. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). And it is inconsistent with principles of inter-branch comity, which caution against imputing bad faith to officials of a coordinate branch—particularly a Senate-confirmed, Cabinet-level constitutional officer. *See Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004).

It is thus not surprising that "[a]llegations that a high government official acted improperly are insufficient to justify the subpoena of that official unless the party seeking discovery provides compelling evidence of improper behavior and can show that he is entitled to relief as a result." *In re U.S.*, 197 F.3d at 314. Plaintiffs have neither offered such compelling evidence nor shown that they would be entitled to relief even if the subjective intentions or even political or other motives

11

of Attorney General Sessions could vitiate an otherwise legitimate federal policy. *See, e.g., Dep't of Com.*, 139 S. Ct. at 2573 ("[A] court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities. . . . Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest group relations, foreign relations, and national security concerns (among others)."); *Jagers v. Federal Crop Ins. Corp.*, 758 F.3d 1179, 1185 (10th Cir. 2014) (an agency decisionmaker's "subjective hope" that factfinding would support a desired outcome does not "demonstrate improper bias on the part of agency decisionmakers"); *In re FDIC*, 58 F.3d 1055, 1062–63 (5th Cir. 1995) ("[T]he fact that agency heads considered the preferences (even political ones) of other government officials concerning how this discretion should be exercised does not establish the required degree of bad faith or improper behavior.").

The Magistrate Judge's disdain for the Government's last-day amendment to its discovery responses ("Such an injustice cannot stand." Doc. 103 at 2) suggests that the court ordered the depositions of former Attorney General sessions and former Secretary Nielsen as a sanction for the Government's litigation conduct. But the actions of the lawyers defending this case do not establish the kind of *agency* bad faith going to the merits of the case necessary to satisfy the bad faith element of the extraordinary circumstances test. As the Ninth Circuit recently clarified, "[b]ad faith is a requirement because when *the agency* has been dishonest, further judicial scrutiny is justified and, in fact, necessary to effectuate judicial review." *In re Dep't of Educ.*, 25 F.4th at 703. It is the agency, not counsel, that must have acted in bad faith. The subpoena should accordingly be quashed.

**B.      The Evidence Sought from The Attorney General Is Obtainable from Other Sources.**

This case is no different from any other in which a plaintiff contends that information from a Cabinet officer is necessary. It is always true that policymaking authority lies with the head of a Cabinet department; for this reason, a bedrock assumption of the apex doctrine is the potential availability of other sources and less intrusive means of discovering the intentions of the ultimate decisionmaker. The Supreme Court's invocation in *Overton Park* of depositions of "administrative officials" "to determine if the Secretary acted within the scope of his authority," 401 U.S. at 420, indicates that the testimony of such lower-ranking officials would be sufficient, and implicitly recognizes that because no Cabinet secretary acts alone, such other officials will possess the necessary information in the rare circumstances warranting extra-record depositions.

In the very case relied upon by the Magistrate Judge, the Ninth Circuit made clear, in the course of deciding to issue a writ of mandamus directing the district court to quash a subpoena for the deposition of former Secretary of Education Elizabeth DeVos, that a plaintiff must show it has exhausted all alternatives before it may be permitted to depose a Cabinet officer:

> Plaintiffs have not established that the information they seek from DeVos is unobtainable in any other way. Plaintiffs' counsel admitted at oral argument that the district court had not considered less intrusive means of discovery, and in their briefing, plaintiffs argue that they are not required to exhaust all other means of discovery before taking DeVos's deposition. Plaintiffs did not exhaust their alternatives here. For example, they did not use all of their interrogatories and never took a Rule 30(b)(6) deposition. Indeed, the district court held that "literal exhaustion of alternatives" was not required. This was error.

*In re U.S. Dep't of Educ.*, 25 F.4th at 704. "Exhaustion of all reasonable alternative sources is required," the Court concluded, "and that requirement was not met here." *Id.*

Likewise, the Eleventh Circuit *In re USA* granted a writ of mandamus ordering the district court to permit an Assistant EPA Administrator to testify in place of the Administrator:

> The dissent fails to explain what information the Administrator can provide the district court that the Assistant Administrator cannot. The dissent fails to cite even a single decision of a circuit court that has upheld an order compelling a high-ranking official of the executive branch to appear in a judicial proceeding.

624 F.3d at 1377.

Plaintiffs have likewise failed to demonstrate that there are no other means of obtaining evidence of General Session's policy goals than a deposition of the former Attorney General himself. This is hardly surprising, for the very suggestion that there are no memoranda or other documents regarding the Attorney General's reasons for adopting the policy strains credulity. Nor is it remotely plausible that he did not communicate his policy goals for adopting the ZTP to *any* subordinates at the Department of Justice or to any other sub-Cabinet official in the United States government. Indeed, Plaintiffs themselves concede that there are other sub-Cabinet officials, with "policy goal knowledge," and that they have already been deposed in this matter:

> Plaintiffs obtained deposition testimony for two of the three sub-Cabinet officials [identified by the Government] with "policy goal" knowledge. *This, along with other officials' testimony, establishes that some Government officials indeed acted with intent to separate families.* Plaintiffs also obtained (or will obtain) testimony from five of the discretion-exercising officials, as well as related Rule 30(b)(6) testimony.

Ex. A, at 2–3 (emphasis added). Plaintiffs, by their own admission, have thus already obtained through discovery the evidence they say they need, and they may yet obtain more. In any event, they have not demonstrated why these sub-cabinet officials, to say nothing of the "over 70 people who Defendant contends exercised 'discretion' within the meaning of the" FTCA's discretionary function exception, did not have and could not provide evidence of the Attorney General's policy goals in adopting the ZTP.

These failures to demonstrate the absence of other potential sources of evidence and to consider alternative means of discovery are dispositive. *See In re United States*, 985 F.2d at 512 (quashing subpoena where "[t]he record discloses that testimony was available from alternate

witnesses"); *In re United States*, 197 F.3d at 314 ("If other persons can provide the information sought, discovery will not be permitted against [a high-ranking] official."); *In re FDIC*, 58 F.3d at 1062 ("it will be the rarest of cases ... in which exceptional circumstances can be shown where the testimony is available from an alternate witness."); *California v. United States*, No. 05-0328, 2006 WL 2621647, at *1 (N.D. Cal. Sept. 12, 2006) (where a party fails "to demonstrate why they [cannot] seek the information they desire by propounding additional interrogatories or noticing other witnesses for deposition," apex deposition should be disallowed); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. 09-01201, 2011 WL 811731, at *1 (N.D. Cal. Mar. 2, 2011) (denying apex deposition where requesting party failed to make a "solid, detailed showing" that the witness had "unique and non-repetitive relevant knowledge that cannot be obtained from other sources"); *Harmston v. City & Cnty. of San Francisco*, No. 07-01186, 2007 WL 3306526, at *3 (N.D. Cal. Nov. 6, 2007) (denying apex deposition where the information sought "can be discovered through written interrogatories and requests for admission").

The District Court for the District of Arizona arrived at this common sense conclusion in sister litigation now pending before that court. There, as here, the plaintiffs asserted FTCA claims against the United States arising from the Government's ZTP. There, the Arizona plaintiffs sought to overcome the apex doctrine and depose former Secretary Nielsen, arguing that evidence of her intentions in adopting the DHS policy that resulted in family separation was essential to their case and available solely from Secretary Nielsen herself. The Court made short work of plaintiffs' contentions:

> Contrary to the Plaintiffs' contentions, Secretary Nielson's testimony while relevant is not essential to the case. Plaintiffs have obtained both documentary and testimonial evidence about the government's intentions in adopting the Zero Tolerance and family separation policies as well as evidence that the government was ill-prepared to manage and track the separated families, to allow

> communications, to reunite the families, and to address the psychological harm
> suffered by Plaintiffs.

Order, *C.M. et al., v. United States of America*, No. 2:19-cv-05217-SRB, Doc. 325 at 4–5 (Nov.

30, 2022). Plaintiffs in this case have "obtained deposition testimony given in [this] parallel case

pending in the District of Arizona, and Defendant agrees those can be used at trial." Ex. A, at 2

n.1. Thus, if there were other sources of essential evidence available to the plaintiffs in the Arizona

litigation to establish the policy goals of the United States in implementing the ZTP, then those

same sources of relevant evidence are available to the litigants in this litigation as well.

    And, if anything more were needed, there is the public record, which is replete with sources

of the sort of evidence that Plaintiffs claim is uniquely available from General Sessions. For

example, there is a report prepared by the Department of Justice's Inspector General,[5] which leaves

no doubt that deposing General Sessions is prohibited under the apex doctrine because it makes

clear "that other lower-ranking members of [General Sessions'] office or administration would

have relevant information about his actions." *Coleman v. Schwarzenegger*, No. CIV S-90-0520,

2008 WL 4300437, at *4 (E.D. Cal. 2008). *See also Sweeney v. Bond*, 669 F.2d 542, 547 (8th Cir.

1982) (stating that because plaintiffs could depose director of revenue, who likely possessed same

information the Governor could provide, plaintiffs failed to establish specific need for Governor's

deposition).

    Plaintiffs thus cannot demonstrate anything approaching the "extraordinary circumstances"

that would entitle them to depose the former Attorney General of the United States about the

exercise of his prosecutorial discretion. Their subpoena should be quashed.

---

[5] *Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services*, No. 21-028, DEP'T OF JUST., OFFICE OF THE INSPECTOR GEN. (Jan. 2021) (Revised Apr. 13, 2022), *available at* https://bit.ly/3M038JZ.

### III.    *MORGAN* AND THE APEX DOCTRINE PROTECT FORMER OFFICIALS.

*Morgan* and the apex doctrine apply no less to former than to current Cabinet officers, and courts have repeatedly and consistently rejected any suggestion to the contrary.[6] To understand why, it is necessary to examine the rationales that warrant judicial solicitude for Cabinet officers and the unique role that they play under the Constitution and laws of the United States.[7]

First, as noted earlier, subjecting Cabinet secretaries, who report directly to the President, to judicial examination threatens the separation of powers between "collaborative instrumentalities of justice," and the "appropriate independence of each should be respected by the other." *Morgan*, 313 U.S. at 422. *See also Vill. of Arlington Heights*, 429 U.S. at 268 n.18 ("[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government."); *In re USA*, 624 F.3d 1368, 1372–73 (11th Cir. 2010) ("the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers," and the higher the rank, the "more substantial" the threat). Plaintiffs say they need to depose General Sessions in order to probe his "unique personal knowledge of [his]

---

[6] *See, e.g.*, *K.C.R. v. Cnty. of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office."); *Sargent v. City of Seattle*, No. C12-1232, 2013 WL 1898213 at *3 n.2 (W.D. Wash. May 7, 2013) (interests protected by apex doctrine "survive[ ] leaving office"); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049–50 (E.D. Cal. 2010) ("The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials, although in the case of former high-ranking government officials, one important rationale for the rule is absent."); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 322 (D.N.J. 2009) ("extraordinary circumstances" "approach applies to both current and former high-ranking government officials"); *Schwarzenegger*, 2008 WL 4300437, at *2.

[7] Cabinet secretaries serve as the president's direct designees for implementing the laws of the land within their departments, and the president "may require the Opinion, in writing, of the principal Officer in each of the executive Departments." U.S. CONST. art. II, § 2, cl. 1. Cabinet secretaries are appointed by the president with the advice and consent of the Senate, are removable at will by the president, and have an enormous range of responsibilities in an extraordinary array of complicated issues. U.S. CONST. art. II, § 2, cl. 2; *see also, e.g.*, 20 U.S.C. § 3411. Other than the president and the courts, Cabinet secretaries are the only officials vested with the authority to appoint inferior officials. U.S. CONST. art. II, § 2, cl. 2.

own intent" when he exercised his prosecutorial discretion as the Nation's chief law enforcement officer. Nothing about his "former" status alleviates the separation of powers concerns raised by delving into the mental processes and subjective intentions that motivated Cabinet-level decision-making. As the Ninth Circuit noted in quashing a deposition subpoena directed at former Secretary of Education DeVos: "Our reasoning applies even though DeVos is no longer serving as secretary. The requested deposition concerns her actions taken during her tenure as secretary and . . . 'the process-inquiry rationale of *Morgan* and its successors hardly becomes inapplicable upon an official's departure from [her] office.' " *In re U.S. Dep't of Educ.*, 25 F.4th at 705 (quoting *In re United States*, 542 F. App'x at 949).

Second, "subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993).[8] This interest no more dissipates after an official resigns than does the privilege over attorney-client communications after the attorney withdraws from the representation, or does the Executive Branch's deliberative-process privilege after a resignation. *See Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464–65 (D.C. Cir. 2014).

Third, allowing depositions of high-ranking Government officials would create "a tremendous potential for abuse or harassment." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D.

---

[8] *See also Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) ("officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and [the] object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government"); *Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("Should the agency head be subject to deposition in every … case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last.").

259, 263 (N.D. Cal. 2012). This rationale applies to "[h]eads of government agencies in particular." *K.C.R.*, 2014 WL 3434257, at *3; *see also Gray v. Kohl*, No. 07-10024, 2008 WL1803643, at *1 (S.D. Fla. Apr. 21, 2008) ("high ranking officials … are vulnerable to numerous, repetitive, harassing, and abusive depositions."). Such harassment and abuse "would likely discourage [people] from accepting positions as public servants." *United States v. Wal-Mart Stores, Inc.*, No. CIV 01-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002). "If [compelled depositions were] allowed the minute cabinet secretaries leave office, overwhelming and unnecessary discovery could also discourage them from taking that office in the first place or leaving office when there is controversy." *In re Dep't of Educ.*, 25 F.4th at 705. As this case demonstrates, for General Sessions and for all high-ranking executive branch officials, these concerns only become more real the moment they leave office and are no longer represented, cost free, by the attorneys who represent the agencies and departments of the Executive Branch. [9] And this case is *but one of over 40* arising out of a single official decision and its implementation during General Sessions' tenure in office. Litigation inevitably ensues after virtually all controversial policy decisions made by Cabinet officers, and few people would be willing to offer themselves for public service at the Cabinet level if it meant dooming themselves to a post-service life as a professional witness.

---

[9] *See, e.g., K.C.R.*, 2014 WL 3434257, at *5 (former undersheriff); *Lederman*, 731 F.3d at 20 (former deputy mayor); *Raymond v. City of New York*, No. 15-6885, 2020 WL 1067482, at *6 (S.D.N.Y. Mar. 5, 2020) (former police commissioners); *Cruz v. Green*, No. 18-60995, 2019 WL 5208913, at *4 (S.D. Fla. Feb. 7, 2019) (former sheriff); *Buckler v. Israel*, No. 13-62074, 2014 WL 7777678, at *2 (S.D. Fla. Nov. 13, 2014) (same); *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743, at *5 (S.D. Fla. Mar. 7, 2012) (former city manager); *Wal-Mart*, 2002 WL 562301, at *5 (former chair of Consumer Product Safety Commission); *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *5 (D.D.C. Sept. 24, 2015) (former FDIC chair and senior deputy director).

In short, "[i]f the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart*, 2002 WL 562301, at *3.

## CONCLUSION

For the foregoing reasons, General Sessions respectfully requests that this Court enter an order quashing the deposition subpoena that Plaintiffs have served upon him, and enter a protective order precluding Plaintiffs from conducting such depositions.

Dated: October 13, 2023                    Respectfully submitted,

                                           /s/Charles J. Cooper
                                           Charles J. Cooper (Bar No. 2244)
                                           Harold S. Reeves*
                                           Nicole J. Moss*
                                           COOPER & KIRK, PLLC
                                           1523 New Hampshire Ave., NW
                                           Washington, DC 20036
                                           (202) 220-9600
                                           ccooper@cooperkirk.com

                                           *Applications for admission pro hac vice
                                           forthcoming

                                           Counsel for Movant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 13, 2023, the foregoing motion and incorporated memorandum of law and exhibits were served via email and CM/ECF, on the following:

Bree Bernwanger
Keker Van Nest and Peters LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Fax: (415) 397-7188
Email: bbernwanger@aclunc.org

Jacqueline Concilla
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 391-5400
Fax: (415) 397-7188
Email: jconcilla@keker.com

Christina Lee
Keker Van Nest and Peters LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Fax: (415) 397-7188
Email: clee@keker.com

Evan McIntyre
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Email: emcintyre@keker.com

Brook Dooley
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 391-5400
Fax: (415) 397-7188
Email: bdooley@keker.com

Victoria Celeste Petty
Lawyers' Committee for Civil Rights of the SF Bay Area
131 Steuart Street, Suite 400
San Francisco, CA 94105
Tel: (415) 543-9444
Email: vpetty@lccrsf.org

Hayden Miles Rodarte
Lawyers' Committee for Civil Rights, San Francisco Bay
131 Steuart Street, Suite 400
San Francisco, CA 94105
(415) 814-7631
Email: hrodarte@lccrsf.org

Travis S. Silva
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Email: tsilva@keker.com

Christopher Steven Sun
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Email: csun@keker.com

Jordan Samuel Wells
Lawyers' Committee for Civil Rights, San Francisco Bay
131 Steuart Street, Suite 400
San Francisco, CA 94105
Tel: (201) 400-9404
Email: jwells@lccrsf.org

*Counsel for Plaintiffs*

Kenneth Warren Brakebill
United States Attorney's Office
450 Golden Gate Avenue
P.O. Box 36055
San Francisco, CA 94102
Tel: (415) 436-7167
Fax: (415) 436-7169
Email: kenneth.brakebill@usdoj.gov

Kelsey John Helland
U.S. Attorney's Office, Northern District of California
Civil Division
450 Golden Gate Avenue
Box 36055
San Francisco, CA 94102
Tel: (415) 436-7167
Email: kelsey.helland@usdoj.gov

Michelle Lo
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue
P.O. Box 36055
San Francisco, CA 94102
Tel: (415) 436-7180
Fax: (415) 436-6748
Email: Michelle.Lo@usdoj.gov

*Counsel for Defendant*

/Charles J. Cooper/
Charles J. Cooper