# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ALABAMA

## SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of a Subpoena to Testify At a Deposition in a Civil Action for Jefferson B. Sessions | CASE NUMBER: 23-mc-00016 |
| Wilbur P.G. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>The United States of America,<br><br>Defendant | In the<br>United States District Court for the<br>Northern District of California<br>**(Related Case)**<br>Magistrate Judge Kandis A. Westmore<br><br>Case No. 4:21-cv-04457-KAW |

## PLAINTIFFS' MOTION TO TRANSFER PURSUANT TO FED. R. CIV. P. 45(f)

## <u>ORAL ARGUMENT REQUESTED</u>

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................................1

II. FACTUAL BACKGROUND ........................................................................................4

III. LEGAL STANDARD ................................................................................................8

IV. ARGUMENT ...........................................................................................................10

    A.     The Northern District has already ruled on the issues presented by the
        Motion. ......................................................................................................10

    B.     Transfer is appropriate because the same discovery issues presented by
        former Attorney General Sessions's Motion are likely to arise in other
        districts. .....................................................................................................14

    C.     The remaining factors articulated in the case law uniformly favor
        transfer.......................................................................................................16

V. CONCLUSION ........................................................................................................18

2388964

**Federal Cases**

*A.P.F. v. U.S.*,
    No. 2:20-cv-00065-SRB (D. Ariz.)......................................................................5

*C.M. v. U.S.*,
    No. 2:19-cv-05217-SRB (D. Ariz.)......................................................................5

*Castner v. First Nat'l Bank of Anchorage*,
    278 F.2d 376 (9th Cir. 1960) .........................................................................3, 13

*In re DeVos*,
    NO. 21-MC-14073-MARTINEZ/MAYNARD (S.D. Fla. Apr. 7, 2021)............. 11, 12, 13, 17

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
    SA MC 15-00022-DCO, 2015 WL 12746706 (C.D. Cal. Oct. 23, 2015)..............................10

*Edwards v. Maxwell*,
    No. 15-CV-07433-RWS-SDNY, 2016 WL 7413505 (S.D. Fla. Dec. 22, 2016).............. 16, 17

*Exist, Inc. v. Shoreline Wear, Inc.*,
    No. 15-61917-MC-DIMITROULEAS/Snow, 2015 WL 13694080 (S.D. Fla.
    October 16, 2015).............................................................................................17

*Fairbank v. Wunderman Cato Johnson*,
    212 F.3d 528 (9th Cir. 2000) .............................................................................13

*Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*,
    309 F.R.D. 41 (D.D.C. 2015)............................................................................10

*Flynn v. FCA US LLC*,
    216 F. Supp. 3d 44 (D.D.C. 2016) ................................................................ 10, 17

*Gallimore v. Mo. Pac. R. Co.*,
    635 F.2d 1165 (5th Cir. 1981) ...........................................................................13

*Glob. Agility Sols. v. Barker*,
    1:20-MC-0314-RP-AWA, 2020 WL 2494625 (W.D. Tex. May 14, 2020)..........................16

*Hernandez v. Ocwen Loan Servicing*,
    LLC, No. 17-80525-cv-MARRA/MATTEWMAN, 2018 WL 2298348 (S.D.
    Fla. May 21, 2018) .............................................................................................9

2388964

*Hoog v. PetroQuest, LLC,*
    338 F.R.D. 515 (2021) ............................................................................. 13

*Jud. Watch, Inc. v. Valle Del Sol, Inc.*,
    307 F.R.D. 30 (D.D.C. 2014) ..................................................................... 9

*Lipman v. Antton,*
    284 F. Supp. 3d 8 (D.D.C. 2018) ........................................................ 12, 13

*McCall v. Bright House Networks, LLC,*
    No. 20-mc-80083-TSH, 2020 WL 4464882 (N.D. Cal. Aug. 3., 2020)................... 9

*Moon Mountain Farms, LLC v. Rural Comty. Ins. Co.*,
    301 F.R.D. 426 (N.D. Cal., July 10, 2014)................................................... 9

*Ms. L v. U.S. Immigration and Customs Enforcement*,
    No. 3:18-cv-00428-DMS-MDD (S.D. Cal. June 26, 2018) ................................ 5

*Sweet v. Cardona*,
    No. C 19-03674 WHA (N.D. Cal. Jan 12, 2021) ......................................... 11

*The Dispatch Printing Co. v. Zuckerman*,
    No. 16-cv-80037-BLOOM/Valle, 2016 WL 335753 (S.D. Fla. Jan. 27, 2016) ........ 8, 14

*U.S. Plywood Integrity Coal. v. PFS Corp.*,
    No. 20-5042 BHS, 2021 WL 409968 (W.D. Wash. Feb. 5, 2021) ........................ 9

*U.S. v. Roy*,
    No. 18-20898-MC, 2018 WL 1894731 (S.D. Fla. Mar. 21, 2018) ...................... 18

*In re UBS Fin. Servs., Inc. Sec. Litig*.
    113 F. Supp. 3d 286 (D.D.C. 2015) ................................................ 4, 9, 16

*Wultz v. Bank of China, Ltd*.,
    304 F.R.D. 38 (D.D.C. 2014)................................................................. 15

**Federal Statutes**

28 U.S.C. § 636...................................................................................... 1

**Rules**

Fed. R. Civ. P. 45 ..................................................................... 3, 8, 10, 15

Fed. R. Civ. P. 45(f) .......................................................................*passim*

Plaintiffs, as the respondents to the motion to quash ("Motion") filed by former Attorney General Jefferson B. Sessions III, hereby move this Court to transfer the Motion to the United States District Court for the Northern District of California pursuant to Federal Rule of Civil Procedure 45(f).

## I. INTRODUCTION

Plaintiffs have obtained an order from the United States District Court for the Northern District of California[1] granting them leave to depose former Attorney General Jefferson B. Sessions III. The former Attorney General moves to quash the resulting deposition subpoena in this Court. Upon a finding of "exceptional circumstances," Federal Rule of Civil Procedure 45(f) authorizes this Court to transfer the Motion to the Northern District of California. Such circumstances exist here, where former Attorney General Sessions essentially mounts a collateral attack on an order of another federal District Court and where the Motion threatens the Northern District's ability to manage its docket. This Court should transfer the Motion to protect the integrity of the judicial process, to conserve judicial resources, and to reduce the chance of conflicting judicial orders.

Plaintiffs in the underlying action are three sets of families who fled violence in Central America in 2018 and traveled to the United States to seek asylum. When Plaintiffs arrived at the U.S./Mexico border, they were arrested by the U.S. Border Patrol. Border Patrol officials, implementing a Family-Separation Policy adopted in 2018 by the Department of Justice and the

---

[1] Magistrate Judge Kandis A. Westmore presides over the District Court in the underlying action, after Plaintiffs and Defendant consented to magistrate jurisdiction under 28 U.S.C. § 636.

1

Department of Homeland Security, intentionally separated the Plaintiff parents from the Plaintiff children, then detained them apart for two to three months. A court in the Southern District of California later held that the Family-Separation Policy was unconstitutional and enjoined its implementation. In the underlying action, Plaintiffs allege that government officials adopted this unconstitutional Policy for the purpose of separating immigrant parents from their children. Plaintiffs assert tort claims for the harm inflicted on them by implementation of the Policy, including intentional infliction of emotional distress and abuse of process, under the Federal Tort Claims Act ("FTCA").

Plaintiffs' claims, and one of the Government's principal affirmative defenses, turn on the intent of government officials and whether those officials exercised discretion in a manner permitted by law. On the ***last day*** of fact discovery in the underlying action, the Defendant, the United States ("the Government"), amended a prior discovery response to disclose a new litigation position. The Government asserted that the intent of only two individuals—former Attorney General Sessions and former Department of Homeland Security (DHS) Secretary Kristjen Nielsen—was relevant to certain of the intent inquiries in the underlying case. Plaintiffs immediately moved for leave to depose former Attorney General Sessions and former Secretary Nielsen, and Judge Westmore granted Plaintiffs' motion.

Former Attorney General Sessions now asks this Court to review and reverse Judge Westmore's order by quashing the deposition subpoena that Judge Westmore specifically authorized. The Court, however, need not—and should not—reach the merits of former Attorney General Sessions's request to overturn the decision of a co-equal court. Instead, his Motion should be transferred back to the Northern District of California because it presents exactly the type of "exceptional circumstances" that warrant transfer under Rule 45(f).

2

*First*, the Court should transfer the Motion because the Northern District "has already ruled on issues presented by the motion." Fed. R. Civ. P. 45 Advisory Committee's Notes (2013). In fact, Judge Westmore considered, and rejected, the very argument on which former Attorney General Sessions relies in his Motion, the so-called apex doctrine. Judge Westmore applied exactly the law that former Attorney General Sessions cites in his Motion and concluded that Plaintiffs had satisfied the three prerequisites for taking the deposition of a Cabinet secretary. Judge Westmore reached her decision with the benefit of deep familiarity with the legal and factual issues in the case, having presided over the underlying litigation for more than two years and having resolved 13 discovery disputes. Any suggestion that Judge Westmore misapplied the relevant law is belied by the fact that the Government, the Defendant in the underlying litigation, neither moved for reconsideration nor sought appellate review of her order.

*Second*, transfer is warranted because the same issues presented in former Attorney General Sessions's Motion "are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 Advisory Committee's Notes (2013). Along with granting leave to take former Attorney General Sessions's deposition, Judge Westmore authorized Plaintiffs to take the deposition of former DHS Secretary Nielsen. Plaintiffs have served former Secretary Nielsen with a deposition subpoena in an agreed-upon forum, the Southern District of California, but anticipate that she will file a similar motion to quash there. Thus, without a transfer, there exists the possibility that three separate United States District Courts will hand down three separate decisions regarding the propriety of deposing former Cabinet secretaries in this action. This situation is exacerbated by the fact that two of those District Courts lie within the Ninth Circuit and this Court lies within the Eleventh Circuit, meaning that, without transfer, two different Courts of Appeal would have appellate jurisdiction to review District Court orders regarding these depositions. To avoid the

possibility of conflicting judicial orders, the Court should transfer former Attorney General Sessions's Motion back to the Northern District of California.

*Third*, all the other relevant factors demonstrate that the Northern District of California is "in a better position to rule on the motion due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *In re UBS Fin. Servs., Inc. Sec. Litig.* 113 F. Supp. 3d 286, 288 (D.D.C. 2015). Courts transfer similar motions where the underlying case is at an advanced stage in the case schedule. *See id.* That is true here, where the underlying case has been pending for over two years, the case is exiting fact discovery, and summary judgment briefing is scheduled to begin in less than a month's time. Courts also transfer similar motions where the motion to quash has the potential to affect the case schedule. Here, Judge Westmore has made clear that compliance with these subpoenas, including the timing of the depositions, will affect the case schedule, which she is not inclined to alter. For these reasons, the Court should transfer the Motion to Quash to the Northern District of California, where the underlying action is pending.

## II.      FACTUAL BACKGROUND

Plaintiffs are three pairs of parents and children, asylum-seekers from Central America, who were separated at the Southwest border of the United States under policies adopted by the prior presidential administration. In April 2018, former Attorney General Sessions issued a memorandum directing prosecutors to adopt a "zero-tolerance policy" and to prosecute all criminal immigration offenses, including where the offenders were adults apprehended with their children. *See* Declaration of Travis Silva In Support of Plaintiffs' Motion to Transfer and Opposition to Motion to Quash ("Silva Decl."), Ex. A at ¶ 45 (Compl., *Wilbur P.G., et. al. v.*

*United States*, No. 4:21-cv-04457-KAW (N.D. Cal. June 10, 2021) ("*P.G.*"), Dkt. 1).[2] In May 2018, former Secretary Nielsen issued memoranda directing Border Patrol agents to refer "all illegal border crossers," including adults traveling with their children, for prosecution. *See* Silva Decl., Ex. V at 33 (Department of Justice Inspector General's Report). The combined impact of these policies was to separate thousands of immigrant children and adults, including Plaintiffs, not only for the oftentimes short duration of a time-served misdemeanor prosecution, but also for weeks, months, or in some cases even years afterwards. *See* Silva Decl., Ex. A at ¶¶ 41-57 (Compl., *P.G.*, Dkt. 1). After public outcry about the cruelty of the Family-Separation Policy, a federal court ruled that the Policy was unconstitutional, enjoined the Government from separating more families under the Policy, and ordered the Government to reunify all separated families. *See generally* Silva Decl., Ex. U (Order, *Ms. L v. U.S. Immigration and Customs Enforcement* ("*Ms. L*"), No. 3:18-cv-00428-DMS-MDD (S.D. Cal. June 26, 2018), Dkt. 83). Plaintiffs allege, and the Government denies, that the Government adopted the Policy **for the purpose of** separating immigrant families and, consequently, that the Government had an intentional Family-Separation Policy during May and June 2018. *See* Silva Decl., Ex. A at ¶¶ 41-57 (Compl., *P.G.*, Dkt. 1).

On June 10, 2021, Plaintiffs filed suit in the Northern District of California, their home district, seeking relief under the FTCA for the harm inflicted on them by the Government's Family-Separation Policy. *See generally id.* They were not alone; dozens of similarly-situated

---

[2] Pincites to exhibits refer to the internal pagination of those exhibits.

plaintiffs seek the same relief in courts across the country.[3] Like the plaintiffs in these parallel actions, Plaintiffs allege that the Government adopted the Policy with the intent to inflict harm on the parents and children it separated, hoping to deter would-be migrants by demonstrating that families seeking asylum in the United States would be met with cruelty. *See id.* at ¶¶ 41-57. Though there is no dispute that the Government forcibly separated thousands of families at the border and kept those families separated for months—something it had never done on such a vast scale before—the Government, to this day, maintains that it did not have a "family separation policy." Rather, the Government has asserted that the separations were an unintended consequence of prosecutorial policies outlined in the two memoranda signed by former Attorney General Sessions and former Secretary Nielsen.

Plaintiffs have spent the last two years gathering evidence to prove that the Policy was intended to cause the forcible separation of families at the border. In other words, family separation was not an unfortunate consequence, but rather the Government's actual goal. Discovery has required an extensive investment of time and effort by both the parties and the Court. After Judge Westmore denied the Government's motions to dismiss and transfer, the parties opened discovery, which has resulted in the production of nearly 65,000 documents including almost 300,000 pages. By the time discovery is complete, the parties will have taken 13 depositions. The Government has produced an additional 21 deposition transcripts from the parallel cases in Arizona. The parties have responded to 38 interrogatories and 123 requests for

---

[3] Most relevant here are two Arizona cases, *C.M. v. U.S.*, No. 2:19-cv-05217-SRB (D. Ariz.) (*C.M.*), and *A.P.F. v. U.S.*, No. 2:20-cv-00065-SRB (D. Ariz.) (*A.P.F.*), which have been consolidated. These two cases are the furthest-advanced actions and have currently-pending cross motions for summary judgment; Plaintiffs' case is third in line.

production. The Government also obtained an order requiring each Plaintiff (including the child Plaintiffs) to sit for two different medical examinations. These discovery proceedings have required Judge Westmore's active management of the case; since discovery opened, she has decided 13 discovery motions.

As part of these discovery efforts, Plaintiffs served an interrogatory shortly after discovery opened seeking information about the Government decisionmakers' motives for adopting the Policy. *See* Silva Decl., Ex. F at 2-4 (Discovery Letter, *P.G.*, Dkt. 98). The Government responded by identifying five individuals with knowledge of the Policy's goals. *Id*. Relying on that representation, Plaintiffs obtained deposition testimony from two of the five officials with purported "policy goal" knowledge—testimony establishing that those officials acted with an intent to separate families. *Id*. Plaintiffs did not seek testimony from former Attorney General Sessions, one of the other individuals identified, because the Government's response indicated that alternative witnesses with relevant knowledge were available to be deposed. But on September 8, the originally scheduled close of fact discovery, the Government amended its response to that interrogatory to assert, for the first time, that "the goals that Defendant sought to achieve in adopting those policies are *solely* the goals for which Attorney General Sessions and Secretary Nielsen, respectively, adopted those policies." *Id*.; *see* Silva Decl., Ex. F (Ex. B) at 7 (Interrogatory Responses, *P.G.*, Dkt. 98-2) (emphasis added). In other words, the Government changed course to claim that *only* Attorney General Sessions's and Secretary Nielsen's intent matters for purposes of determining whether the goal of the Policy was to separate families.

After the Government's change of position, Plaintiffs moved for leave to depose former Attorney General Sessions and former Secretary Nielsen. Although Plaintiffs disagree that only

these two individuals' intent is relevant in the underlying action, the Government's eleventh-hour change in position required Plaintiffs to make efforts to obtain their deposition testimony. *See* Silva Decl., Ex. F at 2-4 (Discovery Letter, *P.G.*, Dkt. 98). The Court granted Plaintiffs' request for leave to depose former Attorney General Sessions and former Secretary Nielsen. *See* Silva Decl., Ex. G at 2-3 (Order, *P.G.*, Dkt. 103). In doing so, Judge Westmore held that Plaintiffs had established the "extraordinary circumstances" necessary under Ninth Circuit law to permit depositions of Cabinet-level officers. *Id.* The Government has not moved for reconsideration of the Court's order, sought leave to file an interlocutory appeal, or sought mandamus.

After granting Plaintiffs' request for these depositions, Judge Westmore called a Case Management Conference and reset the case schedule. The parties are now required to complete all fact depositions, including the deposition of former Attorney General Sessions, by November 7, 2023. *See* Silva Decl., Ex. L at 3 (Stipulation, *P.G.*, Dkt. 119). Summary judgment opening briefs are due seven days later. *Id.* Judge Westmore has made clear that she does not intend to extend the case schedule any further. *See* Silva Decl., Ex. E at 18 (*P.G.*, 7/25/23 Transcript) ("I'm not moving the dates, so I was hoping you weren't going to ask me for that and relieved that you didn't."); Ex. N at 30 (*P.G.*, 10/10/23 Transcript) ("And I'm unlikely to grant extensions to summary judgment briefing because I believe I've given a significant amount of time for the parties' briefs."). Notably, the Court explicitly contemplated, then later reiterated, that the parties would complete former Attorney General Sessions's deposition by the November 7 deadline so that his testimony would be available for summary judgment briefing. *See* Silva Decl., Ex. G at 2 (Order, *P.G.*, Dkt. 103); Ex. L at 3 (Stipulation, *P.G.*, Dkt. 119).

## III.    LEGAL STANDARD

Rule 45(f) permits this Court to transfer a motion to quash a third-party subpoena to the

issuing court for adjudication "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). While "exceptional circumstances" is undefined in the Rule's text, the Advisory Committee Notes provide two examples of when transfer is warranted: "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 Advisory Committee's Notes (2013); *see also The Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037-BLOOM/Valle, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016)*. "Courts applying Rule 45(f) routinely refer to the 2013 Note's language in determining its scope." *U.S. Plywood Integrity Coal. v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (citing cases).

Along with the Advisory Committee Note, the Court "should look to a variety of factors to determine if the judge from the issuing court is in a better position to rule on the motion due to her familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *In re UBS Fin. Servs., Inc. Sec. Litig.*, 113 F.Supp.3d 286, 288 (D.D.C. 2015) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 47 (D.D.C. 2014) (internal quotations omitted)); *see also Hernandez v. Ocwen Loan Servicing*, LLC, No. 17-80525-cv-MARRA/MATTEWMAN, 2018 WL 2298348, at *2 (S.D. Fla. May 21, 2018). "These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Exceptional circumstances also exist "where ruling on the motion to compel would require the court of compliance to duplicate review already conducted by the issuing court, or where it would risk disruption of the issuing court's management of the underlying litigation."

*McCall v. Bright House Networks, LLC*, No. 20-mc-80083-TSH, 2020 WL 4464882, *2 (N.D. Cal. Aug. 3., 2020); *see also Moon Mountain Farms, LLC v. Rural Comty. Ins. Co.*, 301 F.R.D. 426, 430 (N.D. Cal., July 10, 2014). In such circumstances, the issuing court "is in a better position to rule on these motions due to its familiarity with the issues involved." *Id.*

## IV. ARGUMENT

### A. The Northern District has already ruled on the issues presented by the Motion.

The Court should transfer former Attorney General Sessions's Motion to the Northern District of California because that court "has already ruled on" the application of the apex doctrine and determined that his deposition must go forward. Fed. R. Civ. P. 45 Advisory Committee's Notes (2013). Indeed, the fact that Judge Westmore has already ruled on the key issue in the Motion "strongly" favors transfer. *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016) (noting that "the Judge and the Magistrate Judge involved in the underlying case are knee-deep in the nuances of the underlying litigation," which "strongly weighs in favor of transferring the motion [to quash] to the issuing court"); *see also E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, SA MC 15-00022-DCO (DFMx), 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015) ("[N]umerous district courts have found exceptional circumstances" when motion practice "in the issuing court … raises similar arguments to those raised in the motion sought to be transferred."). Judge Westmore held that the apex doctrine does not bar former Attorney General Sessions's deposition, and she did so with the benefit of being intimately familiar with the underling case, after having presided over it for more than two years and having considered and decided over a dozen discovery disputes. *See* Silva Decl., Ex. G at 2-3 (Order, *P.G.*, Dkt. 103); Ex. N at 5 (*P.G.*, 10/10/23 Transcript) ("I think I've had to address about 13 joint letters in this case."). In these circumstances, this Court should permit the Northern District of California

to continue its management of the underlying case, rather than resolving a motion that "requires delving into substantive issues in the highly complex Underlying Action." *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015) (granting motion to transfer).

District Courts within this Circuit transfer motions to quash third-party subpoenas under very similar circumstances. Recently, in *In re DeVos*, the Southern District of Florida transferred a motion to quash a third-party subpoena filed by former Secretary of Education Elisabeth DeVos that, like former Attorney General Sessions's motion, turned on the application of the "apex doctrine." *In re DeVos*, NO. 21-MC-14073-MARTINEZ/MAYNARD (S.D. Fla. Apr. 7, 2021). In the underlying action,[4] student loan borrowers had been granted leave to depose former Secretary DeVos in connection with a class action brought under the Administrative Procedure Act. *Id* at 1. Plaintiffs then served her with a subpoena, and she filed a motion to quash in the Southern District of Florida, citing the apex doctrine. Noting that "the issuing court [was] more familiar with the case, the arguments raised in the motion to quash [were] intertwined with issues that [had] already been presented to the [Northern District of California], and the [Northern District had] already made related discovery rulings," the Court granted the motion to transfer. *Id*. at 2.

The Southern District of Florida's reasoning in *In re DeVos* applies with even greater force here, where the issuing court already has made a ruling expressly applying the apex doctrine, whereas the initial order in the *Sweet*/*DeVos* litigation did not consider apex argument. *See Sweet v. Cardona*, No. C 19-03674 (N.D. Cal. Jan. 12, 2021), Dkt. 172 (five-line order

---

[4] *Sweet v. Cardona*, No. C 19-03674 WHA (N.D. Cal. Jan 12, 2021).

permitting deposition without any apex analysis). Even so, the *DeVos* court found that former Secretary DeVos's motion to quash was "not easily separable from the merits of the underlying litigation," such that the court supervising the underlying action was the court best positioned to resolve the motion given its familiarity with the case. *Id.* at 6. That is even more true here, where, unlike in the *Sweet*/*DeVos* matter, the Northern District already has ruled on the apex issue. Also, as in *Sweet*/*DeVos*, resolving the Motion will require the Court to assess Plaintiffs' evidence of "bad faith or improper behavior" on the part of the Department of Justice, the relevance of former Attorney General Sessions's testimony, and whether the information he can provide is available from some other source. *See, e.g.,* Mot. at 10, 13. These questions are deeply intertwined with "the merits of the underlying litigation" such that transfer is appropriate. *In re DeVos* at 6 (citing *Fed. Deposit Ins. Corp. v. Galan-Alvarez, No. 1:15-nc-00752,* 2015 WL 5602342 at 3 (D.C. Sept 4, 2015)).

"Another factor justifying transfer" in the *In re DeVos* case was "that [the Southern District of Florida's] ruling on the motion to quash would greatly risk disrupting the [Northern District of California's] procedural management of the underlying litigation." *Id.* at 8. Indeed, a number of courts have found that "[t]ransfer can be appropriate when it would avoid interference with a time-sensitive discovery schedule issued in the underlying action." *Lipman v. Antton*, 284 F. Supp. 3d 8, 12 (D.D.C. 2018). The same concern applies here. Fact discovery in the underlying litigation was originally set to close on September 8, 2023, but, largely because of the Government's "fail[ure] to satisfy its discovery obligations," fact discovery has been drawn out and now threatens to overlap with summary judgment briefing. *See* Silva Decl., Ex. J at 2 (Order, *P.G.*, Dkt. 114); Ex. 119 at 3 (Stipulation, *P.G.*, Dkt. 119). As a result, Judge Westmore recently adopted an aggressive case schedule that requires the parties to complete all fact depositions by

November 7. *Id.* Judge Westmore explicitly contemplated that the parties would complete former Attorney General Sessions's deposition by that date so that his testimony would be available in time for summary judgment briefing. *See* Silva Decl., Ex. G at 2 (Order, *P.G.*, Dkt. 103); Ex. L at 3 (Stipulation, P.G., Dkt. 119). Thus, transfer is appropriate "to avoid interference with [this] time-sensitive discovery schedule." *Lipman*, 284 F. Supp. 3d at 12.

*DeVos* is consistent with the general law around transferring motions to quash. The Southern District of Florida also transferred a motion to quash a third-party subpoena in *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515 (2021). The motion was transferred to the Eastern District of Oklahoma where, like here, a motion to compel raising apex doctrine issues had already been filed in front of the Magistrate Judge in a related case. *See Hoog*, 338 F.R.D. at 518. The Southern District of Florida noted that the Magistrate Judge overseeing the underlying case in the Eastern District of Oklahoma had been with the case for multiple years through hundreds of docket entries and understood the detailed and "complex history." *Id.* As a result, the Southern District of Florida found that the issuing court was "better positioned to determine issues of relevancy, … 'Apex Doctrine' issues, and other related issues in light of her close involvement in the Oklahoma litigation and her knowledge of the issues at play in the complex case before her." *Id.* Transferring the case would "avoid any possibility of inconsistent rulings on, *inter alia*, the applicability of the 'Apex Doctrine,' as well as relevancy and proportionality determinations." *Id.* at 519. The same can be said of this case.

Principles of judicial comity also counsel in favor of transferring former Attorney General Sessions's Motion to Quash back to the Northern District of California. Generally, unless "the facts or circumstances have changed significantly in the interim e.g., because of a better-developed record, or a change or clarification in the applicable law from a higher court," a

federal judge should not overrule an order of another co-equal judge. *Gallimore v. Mo. Pac. R. Co.*, 635 F.2d 1165, 1172 (5th Cir. 1981). Such a decision would threaten principles of "comity and uniformity which preserve the orderly functioning of the judicial process." *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 379–80 (9th Cir. 1960); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000). Here, former Attorney General Sessions does not claim that this Court has before it a better developed record; nor does he claim that there has been a change or clarification in the applicable law. Instead, he argues that this Court should reverse Judge Westmore's Order because it was "patently inconsistent" with the governing law and motivated by "disdain" for the Government's litigation tactics. Mot. at 17. Rather than take up this challenge to Judge Westmore's Order—which the Government, the Defendant in the underlying matter, opted not to do via a motion for reconsideration or appellate review—the Court should transfer the Motion back to the Northern District of California for resolution.[5]

**B.**    **Transfer is appropriate because the same discovery issues presented by former Attorney General Sessions's Motion are likely to arise in other districts.**

The Court should transfer former Attorney General Sessions's Motion to Quash to the Northern District of California for a second reason: the same issues presented in his Motion to Quash are likely to arise in discovery in other districts. *See The Dispatch Printing Co. v.*

---

[5] Judge Westmore herself observed the unusual nature of former Attorney General Sessions's request that her order be overturned. *See* Silva Decl., Ex. N at 18 (*P.G.*, 10/10/23 Transcript ) ("I am aware that . . . Mr. Sessions has indicated he will move to quash in the district of compliance. That would be odd just because this is not as straightforward. You know, it's not just a simple subpoena that he would be moving to quash, but a subpoena issued after a court order, so what would essentially amount to appealing my order to another District Court? No, that would just be bizarre.").

*Zuckerman*, No. 16-cv-80037-BLOOM/Valle, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016).

In the same Order granting leave to depose former Attorney General Sessions, Judge Westmore

also granted Plaintiffs leave to depose former DHS Secretary Nielsen. *See* Silva Decl., Ex. G at

2-3 (Order, *P.G.*, Dkt. 103). On October 9, 2023, Plaintiffs served former Secretary Nielsen with

a deposition subpoena through her counsel, who has indicated that the former Secretary is likely

to file her own motion to quash in the Southern District of California, where she resides. *See*

Silva Decl., Ex. O at 1-2 (Correspondence). Thus, it appears likely that, absent transfer, courts in

the Northern District of California and the Southern District of California, as well as this Court,

could issue orders regarding the application of the apex doctrine in this case. And, as is the case

whenever multiple courts consider the same issue, such a scenario raises the possibility of

inconsistent rulings. Compounding this problem is the fact that this Court lies within a different

Court of Appeals than the California courts, raising the prospect that two different ***appellate***

courts might be called upon to review District Court orders about Cabinet secretary depositions

in the same case.

The risk of inconsistent discovery rulings is a textbook example of an exceptional

circumstance warranting transfer. *See* Fed. R. Civ. P. 45 Advisory Committee's Notes (2013);

*see also Wultz v. Bank of China, Ltd*., 304 F.R.D. 38, 46 (D.D.C. 2014) (granting motion to

transfer because inconsistent rulings "should be avoided"). In *Wultz v. Bank of China*, one high-

level foreign official was subpoenaed for a deposition, and many other similar officials

implicated in the same matter were likely to be subpoenaed in different jurisdictions. *Id.* Thus,

the Court concluded, the single motion to quash before the court also "potentially impact[ed]

multiple cases." *Id.*  Because the movant was asserting a foreign state's privilege, and it was

likely the other high-level officials would as well, the court's resolution "might differ from

another court's resolution of such a motion, further impacting the litigation pending before" the issuing court. *Id.* On this basis, the Court transferred the motion to quash because this "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes." *Id.*

### C. The remaining factors articulated in the case law uniformly favor transfer.

The other relevant factors courts have used to determine whether "the issuing court is in a better position to rule on [a] motion [to quash]" counsel in favor of transferring Former Attorney General Sessions's Motion to Quash. *In re UBS Fin. Servs., Inc. Sec. Litig.*, 113 F.Supp.3d 286, 288 (D.D.C. 2015).

First, this is a complex, long-running case that is related to dozens of other similar cases. Two of those similar cases are in the Northern District of California, and one is before Judge Westmore. In adjudicating two threshold motions and over a dozen discovery disputes, and having held four Case Management Conferences, the latest as recently as this month, Judge Westmore is intimately familiar with this case and the underlying subject matter. Under these circumstances, it is sensible to consolidate motions before a judge already familiar with the relevant issues. *Glob. Agility Sols.*, 1:20-MC-0314-RP-AWA, 2020 WL 2494625, at *2 (W.D. Tex. May 14, 2020). By contrast, because this Court is faced with only a single, collateral motion brought by a third party, it "has no familiarity with the details of the case" or "the scope of discovery," additional factors cutting in favor of transfer. *Id.*

Second, ruling on the Motion to Quash risks disrupting the issuing court's procedural management of the underlying litigation. Judge Westmore has been managing the discovery in this case for two years, and recently entered a scheduling order designed to facilitate streamlined and orderly completion of discovery, including former Attorney General Sessions's deposition. *See* Silva Decl., Ex. L at 3 (Stipulation, *P.G.*, Dkt. 119). The deadline to complete fact

depositions, motions briefing deadlines, and trial date are imminent, and transfer is therefore appropriate here to avoid undue interference with Judge Westmore's management of the case. *See id.*; *see also Edwards v. Maxwell*, No. 15-CV-07433-RWS-SDNY, 2016 WL 7413505 (S.D. Fla. Dec. 22, 2016) (finding "[u]niformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties" and that it is important to avoid "disrupting the issuing court's management of the underlying litigation, both procedurally and substantively."); *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 48 (D.D.C. 2016) ("The time-sensitive nature of discovery and the specific discovery procedures implemented in the underlying litigation weigh in favor of transferring the instant motion to quash.").

Third, judicial economy and efficiency favor resolution by the Northern District of California. As noted above, not only is there a real risk that multiple courts will consider the same issue, but relitigating the same matter in a different court is also burdensome on the court system. *Edwards*, 2016 WL 7413505 (S.D. Fla. Dec. 22, 2016) (finding the existence of exceptional circumstances present under Rule 45(f) because there was a great risk of inconsistent rulings and because transfer "foster[ed] the interests of fairness, consistency, judicial economy, and speed of resolution."). Further, to the extent there will be appellate review of any of these issues, it is sensible to consolidate that review such that a single Ninth Circuit panel will be able to review both Judge Westmore's initial order and former Attorney General Sessions's Motion.

On the other hand, no real burden is placed on former Attorney General Sessions if this matter is litigated in the Northern District of California. As in *In re Devos*, Judge Westmore's "civil proceeding are being conducted remotely," which "mitigates the burden on the subpoenaed non-party by a transfer because it minimizes, if not eliminates, any travel costs." *In re DeVos* at 11; *see also Exist, Inc. v. Shoreline Wear, Inc.*, No. 15-61917-MC-DIMITROULEAS/Snow,

2015 WL 13694080, at *3 (S.D. Fla. October 16, 2015) (finding that "any additional burden on the [the subpoenaed non-party] associated with pursing its motion in California will be minimal" because of the option of remote appearance). Any other interest that former Attorney General Sessions claims in having his Motion to Quash resolved in his home district is substantially outweighed by the benefits of transfer. *See U.S. v. Roy*, No. 18-20898-MC, 2018 WL 1894731, at *5 (S.D. Fla. Mar. 21, 2018) (granting a motion to transfer after concluding "the exceptional circumstances that exist here outweigh the minimal interest that Mr. Palomares has in litigating Defendant's Emergency Motion locally."). And Plaintiffs agree to conduct the deposition in Mobile regardless of the outcome of the transfer motion.

## V.  CONCLUSION

Exceptional circumstances exist here that warrant transferring the Motion to the Northern District of California. A transfer promotes judicial economy, relieves this Court of needing to dive into a complex factual record developed in a case with a complicated legal framework, reduces the risk of potentially inconsistent judicial rulings, and allows the court supervising the underlying action to maintain control over its case-scheduling orders. The Motion should be transferred to the Northern District of California.

Respectfully submitted,

Dated:                                    BRISKMAN & BINION, P.C.

By:   */s/ S. Joshua Briskman*

DONALD M. BRISKMAN
    (Fed Ct. Id. BRISD9863)
S. JOSHUA BRISKMAN
    (Fed Ct. Id. BRISS5912)
205 Church Street
Mobile, AL 36602
Tel: (251) 433-7600
Fax: (251) 433-4485
dbriskman@briskman-binion.com
JBriskman@Briskman-Binion.com


Dated:                     KEKER, VAN NEST & PETERS LLP


By:    */s/ Brook Dooley*
BROOK DOOLEY*
TRAVIS SILVA*
CHRISTOPHER S. SUN*
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
bdooley@keker.com
tsilva@keker.com
csun@keker.com

*Applications for admissions pro hac vice pending*

Attorneys for Respondents Wilbur P.G., et al.